UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LONNIE OLMETTI,

                    Plaintiff,                                  Case No. 1:20-cv-395

                                                                Hon. Hala Y. Jarbou
v.

KENT COUNTY, *et al.*,

                    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Lonnie Olmetti was incarcerated at the Kent County Correctional Facility ("KCCF").  Olmetti, through counsel, has filed a lawsuit against a number of defendants for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983.  This matter is now before the Court on defendant Joanne Sherwood, N.P.'s motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 13).

**I.        Background**

Plaintiff's complaint names seven defendants: Kent County; Kent County Sheriff's Department employees Deputy Tyler King and Deputy Justin Linsea; N.P. Joanne Sherwood (named as "Nurse Practitioner Sherwood"); and defendants Justin Mezsetz, Shane Cole, and Eric Santiago, identified by plaintiff as "sheriff's deputies or corrections officers."  Compl. (ECF No. 1, PageID.1-2).  Plaintiff also lists "John/Jane Does" whom he refers to as unknown "sheriff deputies or corrections officers" working at the KCCF.  *Id*. at PageID.2.

Plaintiff's claim arose when he was held as a pretrial detainee at the Kent County Correctional Facility ("KCCF").  *Id*. at PageID.3.  During this time, plaintiff stated that he was 60

1

years old, on SSI (supplemental security income), had "severe back problems that went back for decades", had "severe arthritis", and "was in need of knee and hip replacements." *Id*.  On November 10, 2017, plaintiff was "booked" at the KCCF for a criminal charge of assault with intent to commit murder. *Id*.  He "bonded out" on or about March 23, 2018, was arrested on or about March 25, 2018, and was "booked" again at the KCCF.  *Id*.  Booking records from March 26, 2018, noted that plaintiff had a "bad back", including spinal stenosis, bone spurs, and a bulging and herniated disc.  *Id*. at PageID.4.  According to the complaint, "the March 26, 2018 booking records clearly indicate that during [p]laintiff's incarceration from November 2017 to March 23, 2018, [p]laintiff had a lower bunk assignment due to his significant and obvious medical conditions involving his back and spine." *Id*.

On or about March 26, 2018, defendant Santiago classified plaintiff to be housed in general population.  *Id*.  Santiago made no mention of plaintiff's severe medical conditions and did not ensure that plaintiff was given a low bunk detail.  *Id*.  Plaintiff alleged that he "repeatedly made it known to [d]efendants and the corrections staff that he had severe back problems; that he had previously been assigned a lower bunk detail while at the KCCF; and again needed a lower bunk detail because of his serious back problems." *Id*.  However, plaintiff was only given a "lower bunk/lower level assignment" from March 26, 2018 through March 28, 2018.  *Id*.

Plaintiff alleged that defendant N.P. Sherwood was employed by defendant Kent County to work as a nurse practitioner at the KCCF.  *Id*. at PageID.2.  Plaintiff's sole allegation against N.P. Sherwood appears in ¶ 26:

> On March 28, 2018, Defendant Nurse Practitioner Sherwood wrote an order to discontinue the lower bunk detail for Plaintiff.

*Id*. at PageID.5.

Defendant Santiago re-classified plaintiff on March 29, 2018, for purposes of housing. *Id*. That same day, defendant Cole moved plaintiff to a new cell. *Id*. Plaintiff was not given a low bunk detail. *Id*. Defendant Mezsets was aware of plaintiff's serious medical needs and prior low bunk details, but did not ensure that plaintiff received a low bunk detail. *Id*. On April 3, 2018, plaintiff fell out of the top bunk, suffered serious injuries, and "was rushed to the hospital." *Id*. Despite plaintiff's complaints, defendants King and Linsea handcuffed plaintiff in an "extremely tight manner" and escorted him to the hospital. *Id*. Plaintiff was treated for a scalp laceration, fractured ribs, and received "a sling for comfort in the setting of his rib fractures." *Id*. When plaintiff returned from the hospital on April 3, 2018, unnamed defendants refused to permit him to wear his sling, refused to let him use an incentive spirometer, and refused to give him 2 mats. *Id*.

Plaintiff does not allege a specific claim or count against N.P. Sherwood. Rather, plaintiff's complaint claimed: that "all defendants" were deliberately indifferent to his serious medical needs in violation of the 14th Amendment (Count I); that "all defendants" deprived him of life's necessities in violation of the 14th Amendment (Count II); and, that "all defendants" were grossly negligent (Count IV). *Id*. at PageID.6-12.[1]

## II.   Defendant N.P. Sherwood's motion to dismiss

### A.   Legal standard

Defendant N.P. Sherwood has moved to dismiss Counts I, II and IV pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. N.P. Sherwood seeks dismissal because plaintiff asserted no specific allegations of wrongdoing against

---

[1] The Court notes that plaintiff's two other counts are not directed at N.P. Sherwood. Count III is directed at defendants King and Linsea for use of unreasonable force and Count V is directed at defendant Kent County.

her, nor identified any particularized conduct, action, or inaction by her that was allegedly unconstitutional.  *See* Motion to dismiss (ECF No. 13, PageID.59).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B.    Plaintiff's Exhibits

Plaintiff's response to the motion to dismiss (ECF No. 15-4) includes medical records which were not part of the pleadings, *i.e.*, Exhibit B (his medical screening form from March 26, 2018 (ECF No. 15-3)) and Exhibit C (a medical record from Corizon Health listing a "summary of plaintiff's stay" at the KCCF from March 26, 2018 to May 4, 2018) (ECF No. 15-4). Because plaintiff has sought to expand the record beyond the pleadings which are at issue on defendant's motion to dismiss, the Court will address Fed. R. Civ. P. 12(d) which states that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

As an initial matter, N.P. Sherwood's motion to dismiss does not rely on any facts outside of the pleadings.  It is plaintiff who introduced the documents in his response.  It is well

established that the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). The Court will apply that standard to the documents presented by plaintiff.

Here, it appears to the Court that plaintiff's new documents are central to the allegations in his complaint. First, the complaint which referred to matters set forth in Exhibit B (the medical screening records) as the "booking records". *See* Compl. at PageID.4. Second, the complaint referred to plaintiff's medical condition from March 26, 2018 through April 3, 2018, matters which are set forth in Exhibit C (summary of medical records). *Id*. at PageID.4-6. While plaintiff's counsel could have attached copies of these documents to his complaint, he did not. From the Court's perspective, it appears that counsel is attempting to expand the allegations in his complaint without filing an amended complaint. For her part, N.P. Sherwood does not oppose these particular records or suggest that the filing of the records should trigger Fed. R. Civ. P. 12(d). For these reasons, the Court does not consider plaintiff's filing of matters outside of the pleadings as triggering Fed. R. Civ. P. 12(d).[2]

**C.    Discussion**

**1.    14th Amendment claims**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the

---

[2] The Court notes that plaintiff's counsel did not comply with the Court's local rules when he e-filed a copy of the complaint as an exhibit to the response (ECF No. 15-2). W.D. Mich. LCivR 5.7 (d)(vii)(B) prohibits litigants from attaching a copy of the complaint as an exhibit, stating that "Filers must <u>not</u> attach as an exhibit any pleading or other paper already on file with the court, but shall refer to that document by the ECF No. identified thereon, found in the document header displayed at the top of the electronically filed document." (Emphasis in original.) By disregarding this local rule, plaintiff's counsel has created an illegible ECF filing, which contains overlapping case headers (*i.e.*, docket numbers, ECF numbers, and "PageID" numbers).

Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### a.    Count I (deliberate indifference to serious medical needs)

During the relevant time period, plaintiff was in the custody of KCCF as a pre-trial detainee.  "Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005)  (internal citation omitted).  It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976).  "Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

A viable Eighth Amendment claim consists of an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will

6

have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In Count I, plaintiff alleged that "all defendants" were deliberately indifferent to his serious medical needs.  N.P. Sherwood seeks dismissal of this count because plaintiff has not alleged that she engaged in any particular wrongful conduct.  To state a claim under § 1983, "[p]laintiff must state a plausible constitutional violation against each individual defendant — the collective acts of defendants cannot be ascribed to each individual defendant."  *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012).  Here, the only act which plaintiff alleged as attributable to N.P. Sherwood is that on March 28, 2018, she "wrote an order to discontinue the lower bunk detail for [p]laintiff."  Assuming that plaintiff met the objective component of his claim by having a "serious medical need" when he was booked on March 26, 2018,  he failed to allege any facts to demonstrate the subjective component of his claim, *e.g.*, that N. P. Sherwood's March 28, 2018 order to discontinue the lower bunk detail was an act of "obduracy and wantonness."  The bare allegation that N.P. Sherwood discontinued a lower bunk detail on March 28, 2018, does not

state a 14th Amendment claim for deliberate indifference against Sherwood that is plausible on its face.  *Iqbal*, 556 U.S. at 678.   Accordingly, this claim should be dismissed.[3]

### b.        Count II (conditions of confinement)

The Eighth Amendment mandates that conditions of confinement "must not involve the wanton and unnecessary infliction of pain," "be grossly disproportionate to the severity of the crime warranting imprisonment," or "deprive inmates of the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  In Count II, plaintiff alleged that "[d]efendants' acts and/or omissions resulted in the denial of the minimal civilized measure of life's necessities to [p]laintiff" and that "[d]efendants' acts and/or omissions were deliberately indifferent to [p]laintiff's health and/or safety."  Compl. at PageID.8.  As discussed, *supra*, plaintiff's only allegation against N.P. Sherwood is that she discontinued his lower bunk assignment.  Plaintiff does not allege that N.P. Sherwood committed any other action against him at the KCCF.  Plaintiff's conditions of confinement claim is essentially a re-statement of his claim that N.P. Sherwood was deliberately indifferent to his serious medical needs.  Accordingly, this claim should be dismissed.

### 2.        Gross negligence

In Count IV, plaintiff seeks relief for "Gross negligence as to all defendants." Plaintiff alleged that defendants engaged in grossly negligent conduct and that "according to MCL 691.1407, the breach of [d]efendants' duties to exercise reasonable care was reckless and amounts to gross negligence." Compl. at PageID.10.  This is a supplemental state law claim brought

---

[3] In this regard, the Court notes that plaintiff's Exhibit C does not connect his lower bunk (LB) assignment, or N.P. Sherwood's decision to remove him from that assignment, to his alleged back conditions and arthritis.  Rather, plaintiff was placed on a withdrawal (WD) alert and an LB alert "due to alcohol withdrawals."  Exh. C at PageID.165).  On March 28, 2018, N.P. Sherwood discontinued the withdrawal checks which, in turn, discontinued the WD and LB alerts.

pursuant to 28 U.S.C. § 1367.[4]   Plaintiff's claim fails because under Michigan law, "[t]he governmental immunity statute [M.C.L. § 691.1407] does not itself create a cause of action called 'gross negligence'." *Cummins v. Robinson Township*, 283 Mich. App. 677, 692, 770 N.W.2d 421 (2009).[5]  Accordingly, Count IV should be dismissed.

### III.   Recommendation

For the reasons set forth above, I respectfully recommend that defendant N.P. Sherwood's motion to dismiss (ECF No. 13) be **GRANTED** and that she be **DISMISSED** from this case with prejudice.[6]

Dated:  November 13, 2020              /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[4] Title 28 U.S.C. § 1367(a) provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

[5] As this Court previously observed,

Michigan law does not, as Plaintiff implies, allow a claim sounding in medical malpractice to be brought as a "gross negligence" claim under the Government Tort Liability Act, Mich. Comp. L. § 691.1407. Instead, the courts appear to recognize that both governmental immunity and the malpractice requirements can apply to a plaintiff's claim.  *See Costa v. Cmty. Emergency Med. Servs., Inc.*, 475 Mich. 403, 716 N.W.2d 236 (2006).

*Jones v. Correctional Medical Services, Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012).

[6] Defendant N.P. Sherwood seeks dismissal with prejudice.  While plaintiff opposes the motion, he does not suggest any amendments to his complaint which would cure it; rather, plaintiff asks that the Court deny defendant Sherwood's motion to dismiss "in its entirety."  *See* Response (ECF No. 15, PageID.143).