## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

LONNIE OLMETTI,

      Plaintiff,

v.

                                        CASE NO:  20-cv-395
                                        HON: HALA Y. JARBOU

KENT COUNTY,
TYLER KING, JUSTIN LINSEA,
NURSE PRACTITIONER SHERWOOD,
SHANE COLE, ERIC SANTIAGO, JUSTIN MEZSETS,
and JOHN/JANE DOES, in their individual and official capacities,

      Defendants.

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>SHAWN C. CABOT (P64021)<br>MARK A. PROUDMAN (P81791)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI  48386<br>(248) 886-8650 / (248) 698-3321-fax<br>shawn.cabot@cjtrainor.com<br>mark.proudman@cjtrainor.com | CHAPMAN LAW GROUP<br>DEVLIN K. SCARBER (P64532)<br>Attorney for Defendant Sherwood, only<br>1441 W. Long Lake Road<br>Troy, MI 48098<br>248-644-6326 / 248-644-6324-fax<br>dscarber@chapmanlawgroup.com |
| | VARNUM LLP<br>TIMOTHY E. EAGLE (P38183)<br>Attorney for Kent County Defendants<br>PO Box 352<br>Grand Rapids, MI 49501<br>616-336-6537 / 616-336-7000-fax<br>teeagle@varnumlaw.com |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE RAY KENT'S REPORT AND RECOMMENDATION

### **ORAL ARGUMENT REQUESTED**

**NOW COMES** Plaintiff, by and through his attorneys, CHRISTOPHER TRAINOR &

ASSOCIATES, and hereby objects to the Magistrate Judge's *Report and Recommendation* on

Defendant Joanna Sherwood, N.P.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R.

Civ. P. 12(b)(6) **(ECF No. 18, filed 11/13/2020, PageID. 253-261)**, and fully sets forth the reasons for same in the attached Brief.  In addition, Plaintiff hereby relies on and incorporates by reference his Response to Defendant Sherwood's Motion to Dismiss which was filed on September 3, 2020. **(ECF No. 15, filed 09/03/2020, PageID.119-143).**

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court set aside and not adopt the Magistrate Judge's *Report and Recommendation* for the reasons set forth herein.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES


**s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  November 25, 2020
SCC/

2

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

LONNIE OLMETTI,

      Plaintiff,

v.                                                                CASE NO:  20-cv-395
                                                                  HON: HALA Y. JARBOU

KENT COUNTY,
TYLER KING, JUSTIN LINSEA,
NURSE PRACTITIONER SHERWOOD,
SHANE COLE, ERIC SANTIAGO, JUSTIN MEZSETS,
and JOHN/JANE DOES, in their individual and official capacities,

      Defendants.

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>SHAWN C. CABOT (P64021)<br>MARK A. PROUDMAN (P81791)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI  48386<br>(248) 886-8650 / (248) 698-3321-fax<br>shawn.cabot@cjtrainor.com<br>mark.proudman@cjtrainor.com | CHAPMAN LAW GROUP<br>DEVLIN K. SCARBER (P64532)<br>Attorney for Defendant Sherwood, only<br>1441 W. Long Lake Road<br>Troy, MI 48098<br>248-644-6326 / 248-644-6324-fax<br>dscarber@chapmanlawgroup.com |
| | VARNUM LLP<br>TIMOTHY E. EAGLE (P38183)<br>Attorney for Kent County Defendants<br>PO Box 352<br>Grand Rapids, MI 49501<br>616-336-6537 / 616-336-7000-fax<br>teeagle@varnumlaw.com |

## BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE RAY KENT'S REPORT AND RECOMMENDATION

# **TABLE OF CONTENTS**

**Page**

Table of Authorities……………………………………………………...5

Objection No. 1…………………………………………………………..7

Objection No. 2…………………………………………………………10

Objection No. 3…………………………………………………………14

Objection No. 4…………………………………………………………16

Objection No. 5…………………………………………………………18

Conclusion……………………………………………………………… 20

Certificate of Word Count Compliance……………………………………21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page**

*Bell v. Wolfish,*
441 U.S. 520, 537 (1979)………………………………………………………...15

*Cope v. Gateway Area Dev. Dist., Inc.*
624 Fed. Appx. 398, 402 (6th Cir. 2015)………………………………………...7

*Crugher v. Prelesnik*
761 F.3d 610, 613 (6th Cir. 2014)……………………………………………… 7

*Dominguez v. Correctional Medical Services,*
555 F.3d 543 (6th Cir. 2009)…………………………………………………… 17

*Downard v. Martin,*
968 F.3d 594, 600 (6th Cir. 2020)……………………………………………… 11

*Erickson v. Pardus*
551 U.S. 89, 93 (2007)………………………………………………………...7

*Fabian v. Fulmer Helmets, Inc.*
628 F.3d 278, 281 (6th Cir. 2010)……………………………………………… 7

*Farmer v. Brennan,*
511 U.S. 825, 832 (1994)………………………………………………………...14

*Garcia-Catalan v. United States,*
34 F.3d 100, 103 (1st Cir. 2013)……………………………………………… 11

*Jackson v. Lubelan,*
2020 Mich. App. LEXIS 6024 (September 10, 2020)……………………………... 16

*Lyons v. Powell,*
838 F.2d 28, 31 (1st Cir. 1988)…………………………………………………15

*Oladipupo v. Austin,*
104 F.Supp.2d 626, 639-640 (W.D. La. 2000)…………………………………... 15

*Ruiz-Bueno v. Scott,*
639 Fed. Appx. 354, 359 (6th Cir. 2016)……………………………………...14

*Ryan v. Blackwell*
2020 U.S. App. LEXIS 34727, *8 (6th Cir. 2020)……………………………… 7

*Scott v. Ambani*,
577 F.3d 642, 646 (6th Cir. 2009)…………………………………………………. 8

*Westlake v. Lucas*,
537 F.2d 857, 858 (6th Cir. 1976)………………………………………………… 8

## **Rules**

FRCP 12(b)(6)………………………………………………………………... 7

FRCP 15(a)(2)…………………………………………………………………19

## OBJECTION NO. 1

1.      **The Magistrate Judge's** *Report and Recommendation* **Failed to View Plaintiff's Complaint in a Light Most Favorable to Plaintiff and Failed to Draw All Reasonable Inferences in Favor of Plaintiff.**

"Under Rule 12(b)(6), 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Cope v. Gateway Area Dev. Dist., Inc.*, 624 Fed. Appx. 398, 402 (6th Cir. 2015). Notably and importantly, "[w]hile the plaintiff need not plead specific facts, her statement must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). To that end, as long as the Court can draw the inference that the Defendant is liable for the alleged misconduct, the claims must survive a Motion to Dismiss. *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010). In the case at bar, Plaintiff's Complaint has definitely complied with this standard, and as such, the Compliant must not be dismissed, and the *Report and Recommendation* must not be adopted.

The Sixth Circuit Court of Appeals teaches that when a Complaint is evaluated in light of a Motion brought pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the Court must accept the Complaint's allegations as true **and that all reasonable inferences must be drawn in favor of the Plaintiff.** *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014). In a recent decision by the Sixth Circuit Court of Appeals, the Court acknowledged that the pleading standard is generally construed quite liberally, and that the Complaint must contain enough factual matter to **raise a plausible inference of wrongdoing**. *Ryan v. Blackwell*, 2020 U.S. App. LEXIS 34727, *8 (6th Cir. 2020) **(Exhibit A)**. Furthermore, "[t]he plausibility of an inference depends on a host of considerations, **including common sense** …" *Id.* (Emphasis added). Also, under FRCP

12(b)(6), a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief.  *Cope v. Gateway Area Dev. Dist., Inc.*, 624 Fed. Appx. 398, 402 (6th Cir. 2015).  Finally, "Dismissals of complaints under the civil rights statutes are scrutinized with special care."  *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).

On page two of the *Report and Recommendation*, the Magistrate Judge stated that Plaintiff's sole allegation against Defendant Sherwood appeared in paragraph 26 of Plaintiff's Complaint, which stated as follows: "On March 28, 2018, Defendant Nurse Practitioner Sherwood wrote an order to discontinue the lower bunk detail for Plaintiff."  **(ECF No. 18, PageID.254).** However, the Magistrate Judge failed to recognize the numerous other allegations set forth in the Complaint which were attributable to Defendant Sherwood either by a plain reading of the Complaint, reasonable inference, common sense, or otherwise.   Please see the following allegations attributable to Defendant Sherwood, who was a Nurse Practitioner within the Kent County Jail at the times of the incidents complained of:

- ¶ 15: "During Plaintiff's incarceration in the KCCF from November 10, 2017 through March 23, 2018, his jail records clearly set forth his significant back problems as well as his need for a lower bunk detail."  **(ECF No. 1, PageID.3).**  *As a Nurse Practitioner who worked in the jail, Defendant Sherwood had access to all of Plaintiff's jail medical records and would have been fully aware of Plaintiff's significant health problems as well as his need for a lower bunk detail.*

- ¶18:  "Booking records from the KCCF dated March 26, 2018 specifically noted that Plaintiff had a bad back, spinal stenosis, bone spurs, htn, asthma, a bulging disc; as well as back and disc issues."  **(ECF No. 1, PageID.4).**  *There can be no doubt that at 60 years of age, Plaintiff suffered from significant and serious medical conditions which were fully documented; which is why Plaintiff was given a lower bunk detail during his previous incarceration at the jail.  Despite being aware of this, Defendant Sherwood ignored this and refused to give Plaintiff a continued lower bunk detail when it was clearly obvious he required one.*

8

- ¶ 19: "Plaintiff was known by Defendants[1] to have significant physical problems, including but not limited to his back and spine." **(ECF No. 1, PageID.4).** *As a medical professional in the jail, Defendant Sherwood would have been aware of Plaintiff's significant medical problems.*

- ¶ 20: "In fact, documents related to Plaintiff's incarceration frequently note his back problems and the need for a lower bunk assignment." **(ECF No. 1, PageID.4).**

- ¶ 21: "When Plaintiff was brought to the KCCF by the Kentwood police officers on or about March 25, 2018, it was alleged that he had assaulted an EMT; and this information quickly spread throughout the KCCF." **(ECF No. 1, PageID.4).** *An allegation of an assault against an EMT by Plaintiff would unquestionably rapidly spread throughout the employees of the jail, making it its way to Defendant Sherwood.*

- ¶ 22: "In addition, the March 26, 2018 booking records clearly indicate that during Plaintiff's incarceration from November 2017 to March 23, 2018, Plaintiff had a lower bunk assignment due to his significant and obvious medical conditions involving his back and spine." **(ECF No. 1, PageID.4).**

- ¶ 24: "Plaintiff repeatedly made it known to Defendants[2] and the corrections staff that he had severe back problems; that he had previously been assigned a lower bunk detail while at the KCCF; and again needed a lower bunk detail because of his serious back problems." **(ECF No. 1, PageID.4).** *Because Plaintiff had significant medical problems which necessitated a lower bunk detail during his prior incarceration, he made certain to tell all of the Defendants, which would have included Defendant Sherwood, of his medical problems and need for lower bunk detail during his subsequent incarceration just a mere two days later.*

- ¶31: "On or about April 3, 2018, Plaintiff fell out of the top bunk on to the floor where he laid in a pool of blood; and he was so seriously injured, that he had to be rushed to the hospital." **(ECF No. 1, PagedID.5).**

- ¶38: "When Plaintiff returned from the hospital on April 3, 2018, Defendants [which would have included Defendant Sherwood] refused to permit him to wear his sling, refused to let him use an incentive spirometer, and refused to give him 2 mats." **(ECF No. 1, PageID.6).**

---

[1] Notice the plural of the word, "Defendants."  The use of the plural form of Defendant would naturally and reasonably include Defendant Sherwood.

[2] Again, notice the plural of the word, "Defendants."  The use of the plural form of Defendant would naturally and reasonably include Defendant Sherwood.

9

Contrary to the *Report and Recommendation*, Plaintiff did not simply provide a single fact or allegation as to Defendant Sherwood.  In fact, upon a reasonable reading of the entirety of Plaintiff's Complaint, more than sufficient facts were alleged that were attributable to Defendant Sherwood.  Based on a plain reading of the Complaint alone, it is clear that Plaintiff pled more than sufficient facts to put Defendant Sherwood on notice of the claims being brought against her.  Even beyond the plain reading of the Complaint, it is clear that when all the reasonable inferences are drawn from the Complaint in favor of Plaintiff, he has more than sufficiently provided facts upon which relief can be granted.  Therefore, the Magistrate Judge's *Report and Recommendation* must not be adopted.

## **OBJECTION NO. 2**

II.     **The *Report and Recommendation* Erred in Dismissing Plaintiff's Deliberate Indifference to a Serious Medical Need Claim.**

With respect to Count I (deliberate indifference to serious medical needs), the Magistrate Judge's *Report and Recommendation* erroneously states on page 7, as follows: "Here, the only act which Plaintiff alleged as attributable to N.P. Sherwood is that on March 28, 2018, she 'wrote an order to discontinue the lower bunk detail for [p]laintiff.'"  **(ECF No. 18, PageID.259).**  This is not correct.  As set forth in the previous section of this Brief, Plaintiff's Complaint has set forth a number of factual allegations attributable to Defendant Sherwood and not just one fact as set forth in the *Report and Recommendation.*  When the Complaint is read in its entirety with all inferences and allegations viewed in the light most favorable to the non-moving party, which Sixth Circuit jurisprudence requires, it is clear that not only did Defendant Sherwood discontinue Plaintiff's lower bunk detail, she did so while being aware of Plaintiff's long-standing history and paper trail of jail documents evidencing Plaintiff's serious medical condition and his very recent history of needing and being given a low bunk detail at the Kent County Correctional Facility ("KCCF").

In *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013), the First Circuit Court of Appeals emphasized that when making a ruling under FRCP 12(b)(6), the Complaint must be read as a whole; a high degree of factual specificity is not required; there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action; and for purposes of pleading, "circumstantial evidence often suffices to clarify a protean issue." At this stage of the litigation (a Scheduling Conference has not even yet occurred), Plaintiff has sufficiently alleged Defendant Sherwood's personal involvement as to Plaintiff's claims; and therefore, the Court must not adopt the Magistrate Judge's *Report and Recommendation*.

Under the Fourteenth Amendment, a claim for deliberate indifference to a serious medical need contains both an objective and a subjective component. *Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020). The Magistrate Judge's *Report and Recommendation* determined that the objective component had been met, thus leaving only the subjective component left for analysis. **(ECF No. 18, PageID.259).** As to the subjective component, "an inmate must show both that an official knew of her serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need." *Downard, supra* at 600.

In his discussion of the subjective component of the Fourteenth Amendment deliberate indifference to a serious medical need claim, the Magistrate Judge erroneously opined that Plaintiff had only presented a single bare allegation as to Defendant Sherwood, which was that she discontinued a lower bunk detail on March 28, 2018. **(ECF No. 18, PageID.259).** As set forth and argued in the previous section of this Brief, Plaintiff presented more than just a single, bare allegation as to Defendant Sherwood, and the Complaint sets forth that Defendant Sherwood knew of and was aware of Plaintiff's serious medical need.

First of all, Plaintiff's Complaint alleged that Defendant Sherwood knew of Plaintiff's serious medical need as set forth from the following paragraphs of Plaintiff's Complaint:

- ¶ 15: "During Plaintiff's incarceration in the KCCF from November 10, 2017 through March 23, 2018, his jail records clearly set forth his significant back problems as well as his need for a lower bunk detail." **(ECF No. 1, PageID.3).**

- ¶18: "Booking records from the KCCF dated March 26, 2018 specifically noted that Plaintiff had a bad back, spinal stenosis, bone spurs, htn, asthma, a bulging disc; as well as back and disc issues." **(ECF No. 1, PageID.4).**

- ¶ 19: "Plaintiff was known by Defendants [which would have included Defendant Sherwood] to have significant physical problems, including but not limited to his back and spine." **(ECF No. 1, PageID.4).**

- ¶ 20: "In fact, documents related to Plaintiff's incarceration frequently note his back problems and the need for a lower bunk assignment." **(ECF No. 1, PageID.4).**

- ¶ 21: "When Plaintiff was brought to the KCCF by the Kentwood police officers on or about March 25, 2018, it was alleged that he had assaulted an EMT; and this information quickly spread throughout the KCCF." **(ECF No. 1, PageID.4).**

- ¶ 22: "In addition, the March 26, 2018 booking records clearly indicate that during Plaintiff's incarceration from November 2017 to March 23, 2018, Plaintiff had a lower bunk assignment due to his significant and obvious medical conditions involving his back and spine." **(ECF No. 1, PageID.4).**

- ¶ 24: "Plaintiff repeatedly made it known to Defendants [which again would include Defendant Nurse Practitioner Sherwood] and the corrections staff that he had severe back problems; that he had previously been assigned a lower bunk detail while at the KCCF; and again needed a lower bunk detail because of his serious back problems." **(ECF No. 1, PageID.4).**

As a Nurse Practitioner, Defendant Sherwood had access to Plaintiff's medical records during his recent period of incarceration and knew of his serious medical conditions requiring a lower bunk detail. Defendant Sherwood would have known, or at an absolute minimum should have known, that in Plaintiff's most recent incarceration which ended only a mere two days before, Plaintiff's subsequent incarceration, Plaintiff required and was given a lower bunk detail because of his

serious medical conditions.  As such, Plaintiff's Complaint establishes that Defendant Sherwood knew of Plaintiff's serious medical need.

In addition, Defendant Sherwood was deliberately indifferent to Plaintiff's serious medical needs after his return from the hospital, all of which she would have known either through direct knowledge and/or review of Plaintiff's records.  As a result of falling out of the top bunk which Plaintiff should have never been assigned to in the first place and laying in a pool of blood in the jail cell, Plaintiff was rushed to the hospital.  **(ECF No. 1, PageID.5, ¶31).**  While Plaintiff was at the hospital, he was given morphine and Haldol for the pain; had a laceration in his scalp which had to be sutured with staples; sustained multiple rib fractures; and was issued a sling for comfort in the setting of his rib fractures.  **(ECF No. 1, PageID.6, ¶36).**  However, when Plaintiff returned from the hospital, Defendants, which would have included Defendant Sherwood, refused to allow Plaintiff to wear his sling from the hospital, refused to let Plaintiff use an incentive spirometer, or give him 2 mats; despite his serious medical condition; which now included a head injury and rib fractures.  **(ECF No. 1, PageID.5-6).**  It is common knowledge that a head injury and rib fractures are serious.  Even rib fractures pose significant risks, and therefore effective pain control and the ability to take deep breaths are crucial for optimal recovery; which is why incentive spirometry is important in obtaining the requisite respiratory volumes.[3]

As to the second aspect of the subjective component, Plaintiff must show that despite Defendant Sherwood's knowledge of Plaintiff's serious medical needs, she disregarded or responded unreasonably to the needs.  The allegations in the Complaint clearly show that Defendant Sherwood completely disregarded Plaintiff's serious medical condition (both before

---

[3]https://www.researchgate.net/publication/225278262_Patients_With_Rib_Fractures_Use_of_Incentive_Spirometry_Volumes_to_Guide_Care (last visited November 25, 2020).

and after the fall from the bunk), and at an absolute minimum unreasonably responded to Plaintiff's medical needs.  With multiple fractured ribs, a sling and an incentive spirometer are obvious devices that would be given to a patient suffering from such an injury; yet Defendant Sherwood and the other Defendants refused to allow Plaintiff to use such obviously necessary medical devices.  Furthermore, refusing Plaintiff the use of two mats to lie on, when he has sustained a heady injury requiring sutures and has sustained multiple rib fractures, unquestionably exhibits a deliberate indifference and a complete failure to respond to a serious medical need.  Therefore, the *Report and Recommendation* must not be adopted.

<u>**OBJECTION NO. 3**</u>

**III.    The Magistrate Judge Erred in Dismissing Count II (conditions of confinement claim).**

Once again, the Magistrate Judge's *Report and Recommendation* turns a blind eye to the factual allegations in Plaintiff's Complaint and the reasonable inferences that can be drawn therefrom.  The Magistrate Judge again relied on he erroneous belief that Plaintiff only alleged one sole allegation against Defendant Sherwood, and then erroneously opined that Count II "is essentially a re-statement of his claim that N.P. Sherwood was deliberately indifferent to his serious medical needs."  **(ECF No. 18, PageID.260).**  Then, in a single paragraph with virtually no analysis whatsoever, the conditions of confinement claim was wrongfully dismissed.  The claim must not be dismissed.

The Fourteenth Amendment, incorporating Eighth Amendment precedent, sets forth a guarantee of a right to humane conditions of confinement which includes adequate food, clothing, shelter, **and medical care**.  *Ruiz-Bueno v. Scott*, 639 Fed. Appx. 354, 359 (6th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  As a result of Plaintiff falling out of the top bunk Plaintiff was rushed to the hospital.  As a result of the fall, Plaintiff sustained a head injury which

required staples to close, and also sustained fractured ribs.  As a result, Plaintiff was given a sling

and an incentive spirometer to help with his breathing.  **(ECF No. 1, ¶38, PageID.6).**  However,

when Plaintiff returned to the jail from the hospital, he was not permitted to use an incentive

spirometer, he was not permitted to wear his sling, and he was not even given 2 mats to lay on

which is unreasonable given the significance of his injuries.  *Id.*  The refusal to allow Plaintiff to

use medical devices and mats given his serious condition, especially after being released from the

hospital, amounted to punishment; and the Fourteenth Amendment does not allow a pretrial

detainee to be punished.  *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  The lack of medical care as

argued herein, sets forth a valid condition of confinement claim.

Regarding mats and mattresses, federal courts have found that forcing a pretrial detainee

to sleep without a mattress, or on the floor on a mattress, for even a short period of time, constitutes

a violation of the Fourteenth Amendment.  *Oladipupo v. Austin*, 104 F.Supp.2d 626, 639-640

(W.D. La. 2000) (collecting cases).  In that case, the plaintiff alleged that during his first thirty-six

(36) hours of incarceration, he was confined to a cell without a mattress.  The Court concluded

that the allegation that the inmate was not provided with a mattress constituted a cognizable

Fourteenth Amendment claim; and because there was a genuine issue of material fact as to whether

the defendants' actions were reasonable, summary judgment was denied.

In addition, the First Circuit observed that requiring a pretrial detainee to sleep on the floor

overnight, even with a mattress, may violate the constitution.  *Lyons v. Powell*, 838 F.2d 28, 31

(1st Cir. 1988).  The Court stated as follows:

> We are persuaded by the rulings of our sister circuits that subjecting pretrial
> detainees to the use of a floor mattress for anything other than brief
> emergency circumstances may constitute an impermissible imposition of
> punishment, thereby violating the due process rights of such detainees.
> Naturally, whether the use of floor mattresses amounts to punishment must

be viewed in light of whether such a practice causes the detainee "to endure genuine privations and hardship."

*Id.* at 31.  The fact that Plaintiff returned form the hospital with a head injury and fractured ribs and was denied two mats to use cannot be viewed as anything other than a deprivation of his constitutional rights.  When the refusal of the use of mats is considered against the backdrop that Plaintiff was not even permitted to wear a sling or use a spirometer, Plaintiff has set forth a valid and cognizable conditions of confinement claim.  As such, the decision of the Magistrate Judge must not be adopted.

## OBJECTION NO. 4

IV.     **The *Report and Recommendation* Wrongly Concluded that Gross Negligence is not a Cause of Action.**

In the *Report and Recommendation*, the Magistrate Judge erroneously opined that "Plaintiff's claim fails because under Michigan law, '[t]he governmental immunity statute [M.C.L. § 691.1407] does not itself create a cause of action called "gross negligence."'  **(ECF No. 18, PageID.261).**  This is simply an incorrect statement of the law.

Contrary to the Magistrate Judge's *Report and Recommendation*, individuals can be held liable for gross negligence; and as such, it is a viable cause of action.  In fact, on September 10, 2020, the Michigan Court of Appeals issued an opinion involving police officers where the sole claim asserted against them was gross negligence.  *Jackson v. Lubelan*, 2020 Mich. App. LEXIS 6024 (September 10, 2020) **(Exhibit B).**[4]  The Michigan Court of Appeals defined gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id*. at *34.  The *Jackson* decision concluded, that in light of the definition of gross

---

[4] The state court case from which the appeal decision ultimately resulted, began with a single claim of Gross Negligence brought in the Genesee County Circuit Court.  A copy of that Complaint is set forth herein as **Exhibit C.**

negligence that "[a] jury could reasonably conclude from this evidence that defendants 'simply did not care about the safety or welfare' of plaintiff when defendants arrested him and transported him in the police vehicle while completely ignoring his numerous complaints of pain and discomfort he was experiencing as a result of how defendants placed him into the vehicle, during which time plaintiff suffered injuries."  *Id*. at *37.

In the instant matter, the facts set forth in Plaintiff's Complaint of which Defendant Sherwood was grossly negligent include but are not limited to: her knowledge of Plaintiff's serious medical conditions and needs both before and after Plaintiff's tragic fall off the top bunk; her complete disregard of Plaintiff's requisite need for a low bunk detail given his age and his prior low bunk assignment; her refusal to allow Plaintiff to use medically-recommended slings and spirometers given his multiple fractured ribs; and her refusal to allow Plaintiff to have 2 mats to lie on after his release from the hospital with various serious injuries including a sutured scalp and fractured ribs.  Clearly, Plaintiff has provided sufficient facts to show that Defendant Sherwood's actions and/or inactions exhibited grossly negligent behavior; and furthermore, gross negligence is a valid claim.

Furthermore, in footnote 5 of the *Report and Recommendation*, the Magistrate Judge appears to imply or infer that Plaintiff has somehow brought a medical malpractice claim; which is not the case.  Plaintiff's Complaint and the factual allegations set forth therein, clearly do not sound in medical malpractice.

The case of *Dominguez v. Correctional Medical Services*, 555 F.3d 543 (6th Cir. 2009) is instructive in that Plaintiff's claims against Defendant Sherwood must proceed.  *Dominguez* involved the actions and/or inactions of a prison nurse with respect to an inmate who was experiencing obvious signs of heat stroke, which continued to worsen, but did nothing.  The district

court denied the nurse's motion for summary judgment as to the deliberate indifference claim and further determined that the claim for gross negligence under Michigan law should proceed. *Id.* at 548.  The decision of the district court was ultimately affirmed by the Sixth Circuit. *Id*. at 553.

The Sixth Circuit stated that deliberate indifference to a serious medical need contains both an objective and subjective component. *Id*. at 550.  With respect to the subjective standard, the court stated, "[t]his subjective standard 'is meant to prevent the constitutionalization of medical malpractice claims,' however, 'a plaintiff need not show that the officer acted with the specific intent to harm.'  This Court has previously determined that 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 550. (internal citations omitted).   Additionally, the Sixth Circuit further stated that "[b]ecause government officials do not readily admit the subjective component of this test, it may be 'demonstrat[ed] in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. at 550.

Therefore, the Sixth Circuit has made it clear that not only is there a cognizable claim for deliberate indifference to a serious medical need against a medical professional working in the jail/prison setting, but that there can also be a separate and cognizable claim for gross negligence. Therefore, the Magistrate's *Report and Recommendation* erred in recommending that the gross negligence claim be dismissed; and as such, Plaintiff respectfully requests that this Court not adopt the Magistrate Judge's recommendations.

## OBJECTION NO. 5

**V.    Defendant Sherwood Must not be Dismissed With Prejudice and Plaintiff Must be Permitted to Amend his Complaint**

In footnote 6 of the *Report and Recommendation*, the Magistrate Judge wrote, "Defendant N.P Sherwood seeks dismissal with prejudice.  While plaintiff opposes the motion, he does not suggest any amendments to his complaint which would cure it; rather, plaintiff asks the Court deny defendant Sherwood's motion to dismiss "in its entirety."  **(ECF No. 18, PageID.261).**  In his Response and in these Objections, Plaintiff's position is that the Complaint is not subject to dismissal under FRCP 12(b)(6) because there are sufficient facts and/or reasonable inferences made as to Defendant Sherwood and the liabilities attached to her actions and/or inactions; and that Plaintiff has otherwise cognizable claims.  To have requested to be permitted to amend the Complaint prior to a decision by the Court would have been a concession that the Complaint was inadequate, which it is not.  Plaintiff argued then and continues to argue that the Complaint is more than sufficient to withstand Defendant Sherwood's Motion to Dismiss pursuant to FRCP 12(b)(6).

However, in the event that this Court agrees with the Magistrate Judge's *Report and Recommendation*, then Plaintiff does respectfully request to amend his Complaint.  Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs district courts to freely grant such amendments when justice so requires.

## CONCLUSION

In light of the arguments and caselaw set forth herein, Plaintiff respectfully requests that this Honorable Court set aside and overturn the Magistrate Judge's *Report and Recommendation*.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**/s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  November 25, 2020
SCC/

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: ***all attorneys of record***.  I also certify that I sent the foregoing paper by United States Postal Service to the following non-ECF participants: **None.**

/s/ Shawn C. Cabot
Shawn C. Cabot (P64021)
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

The undersigned certifies that the pursuant to Local Rule 7.2(b), the number of words in this document totals 4,340 words.  The word count function of Microsoft Office Word (Version 10) was used to generate the word count.

<u>/s/ Shawn C. Cabot</u>
Shawn C. Cabot (P64021)
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com