UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNIE OLMETTI,

    Plaintiff,

v.

KENT COUNTY, et al.,

    Defendants.
_____/

Case No. 1:20-cv-395

Hon. Hala Y. Jarbou

## OPINION

The reviewing magistrate judge issued a Report and Recommendation (R&R, ECF No. 113) on July 28, 2022, recommending that the Court grant in part and deny in part Defendants' motion for summary judgment (ECF No. 68). This motion for summary judgment was filed by Defendants Kent County and Kent County Sheriff's Department Deputies Tyler King, Justin Linsea, Justin Mezsets, Shane Cole, and Eric Santiago (collectively, "Kent County Defendants"). Before the Court are Plaintiff's objections (ECF No. 118) and Defendants' objections (ECF No. 116) to the R&R. The Court will adopt the R&R in part and reject it in part.

### I. BACKGROUND

Plaintiff was a pre-trial detainee in the Kent County Correctional Facility (KCCF) when he fell from an upper bunk and suffered several injuries. During a prior incarceration, Nurse Sherwood assigned Plaintiff to a lower-bunk detail due to acute exacerbations of his pre-existing health issues. These exacerbations were not present when Plaintiff returned to KCCF, so the detail was removed shortly before the fall. Deputy Santiago re-classified Plaintiff to general housing. Deputy Cole moved Plaintiff to his new cell. After the fall, Deputy Mezsets responded to the incident and Deputies King and Linsea escorted Plaintiff to the hospital for treatment. As a part

of the treatment, the hospital staff prescribed Plaintiff various medical equipment, including a sling, incentive spirometer, and two mats. Sherwood ordered that Plaintiff receive the equipment when he returned to KCCF from the hospital, but Plaintiff alleges that the deputies refused to give him the equipment.

Invoking 42 U.S.C. § 1983, Plaintiff brought numerous claims against Defendants, alleging violations of the Constitution and state law. Against the Kent County Defendants, Plaintiff alleges that that they were deliberately indifferent to Plaintiff's serious medical needs (Count I); that Defendants deprived Plaintiff of his life's necessities amounting to unconstitutional conditions of confinement (Count II); that King and Linsea used unreasonable force against Plaintiff (Count III); that Defendants were negligent (Count IV); and that Kent County's customs, practices, and policies, including failure to train, were unconstitutional (Count V).

The R&R recommended granting the Kent County Defendants' motion for summary judgment on Counts I, II, and V, dismissing Kent County and Mezsets from the case; denying summary judgment on Count III against King and Linsea; granting summary judgment on Count IV against King and Linsea, but denying on this count against Santiago and Cole. In the alternative, the R&R recommended dismissing Count IV against Santiago and Cole under 28 U.S.C. § 1367. Plaintiff advances eleven objections to the R&R, and Defendants present three objections.

## II. STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure, the Court must review de novo the portions of the R&R to which objections have been properly made:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

2

Fed. R. Civ. P. 72(b)(3)

## III. ANALYSIS

### A. Plaintiff's Objections

#### 1. First Objection - Mezsets

First, Plaintiff objects to granting summary judgment and dismissal in favor of Mezsets. The magistrate judge determined that Plaintiff failed to articulate any claim against Mezsets, and that there was no evidence to support any constitutional claims against him. Plaintiff raises several facts from which he argues "reasonable inferences" can be drawn to show that Mezsets committed constitutional violations. Plaintiff points to his deposition testimony:

> Q.   All right. So your testimony is you told Deputies –
>
> A.   Cole.
>
> Q.   --Cole, Santiago, and Mezsets?
>
> A.   And of course Joanne Sherwood.
>
> Q.   and potentially others, but as far as defendants you told them in between –
>
> A.   As far as I see, besides Tyler King and Justin, you know, a couple of days later, everyone on here and maybe Justin Mezsets.
>
> Q.   Okay.
>
> A.   I don't know. I can't place him like I told you.
>
> Q.   Okay. All right. You also allege that you repeatedly made it known to defendants that you had previously been assigned to a lower bunk detail while at KCCF. Do you see that?
>
> A.   Oh, yeah. Yeah, I did.

(Pl.'s Obj. 6, ECF No. 118 (citing Olmetti Dep., ECF No. 90-4, PageID.1909).) This testimony does not establish that Mezsets knew of Plaintiff's need for a lower bunk, as Plaintiff admits that he "can't place him." (Olmetti Dep., PageID.1909.) Plaintiff reaffirms this admission shortly after

3

when he is asked, "Did you tell Deputy Mezsets that you previously had a lower bunk?", to which he replies, "I don't know. I told you that earlier. I can't remember." (*Id.*)

Plaintiff argues that he testified that Mezsets "was involved" in not permitting him to have the medical equipment given to him by the hospital. (Pl.'s Obj. 6.) When asked in his deposition the basis for his belief that Defendants deprived him of his medical equipment, Plaintiff stated "I think that each one of them are guilty in their own part. I just can't give you exact reason, but they are all players in what happened to those items." (Olmetti Dep., PageID.1910.) Plaintiff gave no other basis for Mezsets' involvement other than his personal belief, which is not sufficient to survive summary judgment. *See Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference. . ."); *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("'This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Plaintiff also points out that Mezsets was aware that Plaintiff had assaulted a medical staff member upon arrival at the jail, and that Mezsets worked where Plaintiff was housed on the days preceding and on the day of his fall, and while on duty, Mezsets was required to walk by every cell to check on inmates. Plaintiff argues that these facts combined with his testimony that he complained to corrections staff that walked by his cell about the lower bunk detail, is enough to establish that Mezsets violated his constitutional rights. On summary judgment, "[c]ourts consider the evidence in light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013). However,

4

even considering the evidence in Plaintiff's favor, the mere possibility that Plaintiff could have told Mezsets that he should have a lower bunk detail as Mezsets passed by on does not establish that Mezsets was aware of Plaintiff's medical needs that would subject him to an excessive risk of harm. The Court will overrule Plaintiff's objection.

### 2. Second Objection – Deliberate Indifference Framework

Second, Plaintiff contends that the R&R applied the wrong analytical framework for Plaintiff's deliberate indifference claims. Specifically, Plaintiff argues for the application of the Fourteenth Amendment's modified framework for pretrial detainees, rather than the application of the Eighth Amendment analysis. The Court agrees that the appropriate standard to apply is under the Fourteenth Amendment, not the Eighth Amendment, because Plaintiff was a pretrial detainee.

Although the analysis for Eighth and Fourteenth Amendment deliberate indifference claims used to be identical, the Sixth Circuit recently modified the Fourteenth Amendment's deliberate indifference framework in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021). The modified standard has three elements:

> (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Trozzi v. Lake Cnty.*, 29 F.4th 745, 757-58 (6th Cir. 2022). In *Trozzi*, the Sixth Circuit held, in part, that pre-*Brawner* conduct is properly analyzed under pre-*Brawner* case law only for the clearly established law inquiry in the qualified immunity analysis. *Id.* at 761 ("Turning, then, to the clearly established inquiry, qualified immunity is appropriate unless the officer in question had 'fair notice' that her conduct was unlawful. . . . [W]e agree . . . that pre-*Brawner* case law . . . is the appropriate focus for determining what constitutional rights are clearly established.").

5

Therefore, the Court will sustain Plaintiff's objection on the use of the appropriate deliberate indifference standard.

### 3. Third Objection – Deliberate Indifference Claims

Third, Plaintiff objects to the magistrate judge's recommendation to grant summary judgment to Defendants on the deliberate indifference claims on different grounds.

Plaintiff compares this case to *Asgaard v. County of Marquette*, No. 2:20-CV-00153, 2022 WL 708835 (W.D. Mich. Jan. 31, 2022), *R&R adopted*, 2022 WL 593596 (W.D. Mich. Feb. 28, 2022). However, Plaintiff's reliance on *Asgaard* is misplaced. Although *Asgaard* contains superficial similarities to this case, a medical judgment is notably absent in *Asgaard*. As the Court held in its previous order, Nurse Sherwood made a medical judgment when she concluded that there was not a sufficient medical basis to reinstate the lower-bunk detail. (*See* 9/3/2022 Op. 7-9, ECF No. 134.) *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 842 (W.D. Mich. 2012) ("Where the defendant made a reasoned choice between two alternative treatments, considering the risk to the patient in doing so, the courts typically refuse to second-guess the doctor's judgment, even when the decision was in fact wrong.").

#### (a) Defendant Santiago

The magistrate judge determined that Santiago did not act with deliberate indifference to Plaintiff's medical needs because he was entitled to "rely on the medical staff's professional assessments that Olmetti did not need a lower bunk detail." (R&R 8 ("[W]e have recognized that a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably deferred to the medical professionals' opinion." (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 608 (6th Cir. 2022))).) Plaintiff argues that this deference does not save Santiago, because Santiago had the ability to enter a lower bunk alert without the permission

6

of medical staff. Plaintiff provides no support for this assertion. The deliberate indifference analysis entitles non-medical staff to defer to medical judgments, *see Greene*, 22 F.4th at 608, and it is undisputed that Santiago was aware that medical staff removed Plaintiff's lower bunk detail. Therefore, the Court will overrule Plaintiff's objection as to Santiago.

### (b) Defendant Cole

Plaintiff contends that Cole was deliberately indifferent to his serious medical needs because Cole failed to ensure Plaintiff had a lower bunk when transporting Plaintiff to his new cell after Plaintiff had informed Cole of his health issues. By Plaintiff's own testimony, Cole went to double check and set Plaintiff's lower bunk detail after hearing Plaintiff's complaints. (Olmetti Dep., ECF No. 90-2, PageID.1874 ("So after about 15, 20 minutes Cole says hey, go back to your cell so I can figure this out. . . . So finally they call me up again. . . . Okay. Lower bunk detail. Yep, it's all set. That is exactly what he said.") When Plaintiff arrived at his cell, he found another inmate there who had a lower bunk detail as well. When Plaintiff turned to report this to Cole, Cole was gone. Because Cole stopped at the dayroom door to speak with two guards, he was not at Plaintiff's cell when Plaintiff arrived and found out about the other inmate. (Olmetti Dep., PageID.1876.) Plaintiff has failed to establish that Cole "knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk," *Trozzi*, 29 F.4th at 547-758, because Plaintiff has not shown that Cole was aware that Plaintiff had not received a lower bunk. Therefore, Cole is entitled to summary judgment on this count.

### (c) Defendants King and Linsea

The magistrate judge determined that King and Linsea were entitled to summary judgment on this count because Olmetti's claims against them only arose after he fell from the top bunk, i.e., the way that King and Linsea treated him in transporting him from the hospital, and the handling of the medical equipment. Plaintiff argues that the R&R fails to address that King and Linsea were

7

involved in Plaintiff failing to receive medical devices and prescriptions after leaving the hospital. Plaintiff fails to explain how these actions amount to a deliberate indifference claim. Therefore, the Court agrees with the magistrate judge and will overrule this objection.

### 4. Fourth Objection – Conditions of Confinement

The magistrate judge found that Plaintiff failed to establish a conditions of confinement claim based on the missing medical equipment after Plaintiff returned from the hospital. Plaintiff argues that his conditions of confinement claim is not limited to those facts, but also includes Defendants' previous refusals to provide him with a lower bunk before his fall. As Defendants pointed out in their motion for summary judgment, this Court's previous order held that "Count II alleges a Fourteenth Amendment violation based on the prison conditions Olmetti was subjected to after he returned from the hospital." (12/31/2020 Order 5, ECF No. 23.) Plaintiff did not argue in his response to Defendants' motion for summary judgment that his conditions of confinement claim should be based on the facts before his fall, and therefore the R&R did not consider those facts. Plaintiff does not provide argument in his objection on how the events before his fall would constitute a conditions of confinement claim, merely objecting that the R&R did not consider those events. In any case, the Court would not address those issues now as "'absent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.'" *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1070 (N.D. Ohio 2014) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

Next, Plaintiff objects to the R&R's conclusion that there is no evidence to support his conditions of confinement claim based on the missing medical equipment. The magistrate judge found that Plaintiff provided no factual basis that any of the named defendants denied him medical equipment. Plaintiff argues that, at a minimum, the evidence supports a claim against King and Linsea because when they returned from the hospital, King and Linsea took Plaintiff's sling,

8

incentive spirometer and prescription for pain medication at intake. However, Nurse Sherwood wrote Plaintiff a prescription for the medical equipment recommended by the hospital. Plaintiff has not presented any evidence that King and Linsea were the ones who refused to fill Plaintiff's prescription; the fact that they took the hospital supplied items at intake is not sufficient to carry this conditions of confinement claim.

The magistrate judge also determined that Plaintiff failed to establish that Defendants threw away inmate kites. In his objection, Plaintiff concedes that he could not identify any corrections officer by name but argues that his testimony that he saw unnamed guards throw away kites supports a *Monell* claim against Kent County. Again, this argument was not made before the magistrate judge. Therefore, the Court agrees with the magistrate judge and will grant summary judgment on Count II to all Defendants.

### 5. Fifth Objection – Excessive Force (Handcuffing)

Plaintiff objects to the finding that there was no evidence to support the claim that King and Linsea used excessive force against Plaintiff when they handcuffed him. The magistrate judge found that Plaintiff alleged only subjective pain in response to the overly tight handcuffs, which the R&R stated is not enough to establish such a claim. Plaintiff argues that, rather than just subjective pain, he presented some evidence of physical injury. Among other things, Plaintiff points to his medical records which document hand pain and numbness. (*See* Medical Records, ECF No. 118-6, PageID.3176-80.) In *Hughey v. Easlick*, 3 F.4th 283 (6th Cir. 2021), the Sixth Circuit favorably cited a similar case where the plaintiff had asserted that his "'hands were numb and swelling' because of too-tight handcuffing." *Id.* at 290 (quoting *Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997)). The Sixth Circuit stated,

> "[N]otwithstanding the absence of evidence that Martin continued to suffer numbness and swelling after the handcuffs were removed, or otherwise incurred injury," we concluded that he had created a genuine dispute of material fact about

9

> excessive force. Martin suffered no bruising, and the court did not even comment on whether his injuries lasted after release from the handcuffs. Yet we still determined that Martin survived summary judgment.

*Id.* at 290-91 (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394 (6th Cir. 2009) (describing *Martin*, 106 F.3d at 1310)). In response, Defendants argue that Plaintiff presents this argument for the first time in his objection to the R&R. However, Plaintiff's response to Defendants' motion for summary judgment made similar arguments. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 32, ECF No. 89-1 ("[T]he nursing records record that Plaintiff had a swollen and numb hand.").)

Defendants also argue that there is no evidence to support the claim that the handcuffing caused Plaintiff's injuries other than his own testimony. The medical records document that Plaintiff suffered hand pain and numbness, but it is not clear from the records whether tight handcuffing caused or exacerbated Plaintiff's injuries. Plaintiff's testimony is sufficient to create a factual dispute.

Lastly, Defendants point to Plaintiff's testimony where he was asked, "relative to them handcuffing you, just that, did you sustain injury because they handcuffed you?" (Olmetti Dep., PageID.1903.) In reply, Plaintiff said, "The injury I substained [sic] is the pain -- they cause me a lot more pain than I needed to be put through, and that I shouldn't have been put through is what the answer to that would be." (*Id.*) In *Hughey*, the plaintiff had similarly answered "'[n]o'" to the question "'[d]id you have any wrist injuries because of the handcuffs.'" *Id.* However, the Sixth Circuit stated,

> A layperson like Hughey is likely unfamiliar with the complicated caselaw governing excessive-force handcuffing claims. She may have answered "no" because she did not equate wrist marks from handcuffs with an "injury"; the word "injury" to her might have invoked a more painful experience, such as a fracture.

10

*Id.* Plaintiff's testimony does not sink his claim, because "[a]t the summary-judgment stage, [] [his] statement [that he experienced pain] does not preclude a genuine dispute of material fact." *Hughey*, 3 F.4th at 291.

Therefore, the Court will sustain Plaintiff's objection and deny summary judgment to King and Linsea on Plaintiff's claim of excessively forceful handcuffing.

### 6. Sixth Objection – *Monell* Liability

Plaintiff alleged *Monell* liability against Kent County for constitutional violations based on its failure to train and supervise its staff. The R&R found that Kent County could not be liable for deliberate indifference to serious medical needs under *Monell* because Plaintiff failed to establish that any of the Defendant Deputies had committed deliberate indifference. For *Monell* liability based on the excessive force claims against King and Linsea, the magistrate determined that Plaintiff "failed to present any evidence as to whether the escort or transport of an injured inmate to an off-site hospital emergency room is a recurring situation at KCCF which would justify additional training." (R&R 26.) Plaintiff objects to both these determinations.

For municipalities to be held liable under § 1983, a plaintiff must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The plaintiff must establish that the policy or custom was the "'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). There are several ways a plaintiff can show an illegal policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.*

Plaintiff argues that a municipality can be subject to *Monell* liability in the absence of underlying constitutional claims against a municipality's officers. Plaintiff points to *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018) in support. In *Winkler*, the Sixth Circuit discussed the district court's finding that "the County could not be held liable under § 1983 because 'there is no underlying unconstitutional conduct by any of the individual defendants in this case.'" *Id.* at 899. The Sixth Circuit clarified that such a sweeping proposition is not so clear in this circuit, pointing to several cases where the circuit recognized that a "'municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity.'" *Id.* at 900 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993)). The court also pointed to several other circuits that have concluded that a municipality may be held liable under § 1983 where no individual liability is shown. *Id*. at 900-901 (citing cases). However, the Sixth Circuit did not decide whether this holds true in this circuit. *Id.* at 901 ("But we need not decide whether, under our court's precedent, a municipality's liability under § 1983 is always contingent on a finding that an individual defendant is liable for having committed a constitutional violation.").

"[T]o show that a municipality is liable for a failure to train its employees, a plaintiff 'must establish that: (1) the city's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). "[D]eliberate indifference is a stringent standard of fault." *Id.* Deliberate indifference can be shown by either (1) "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it or (2) evidence

of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* at 836 (citing *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)); *Griffith v. Franklin Cnty.*, 975 F.3d 554, 583 (6th Cir. 2020). The Supreme Court explained the single-violation theory in *City of Canton v. Harris*, stating "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. 378, 390 (1989).

### (a) *Monell* Liability Based on Deliberate Indifference to Serious Medical Needs

Under the first manner of showing Kent County's deliberate indifference in failing to train or supervise its employees, Plaintiff has failed to provide specific prior instances of unconstitutional conduct under similar circumstances that would have put Kent County on notice of a problem with its training. Under the second, Plaintiff has neither provided evidence of a single violation of federal rights, nor has he shown that "the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference" for the County to fail to prepare officers for it. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020). Therefore, whether or not the County can be held liable in the absence of underlying constitutional violations by individual defendants, Kent County is entitled to summary judgment on this count.

### (b) *Monell* Liability Based on Excessive Force

Plaintiff has not provided specific prior instances of unconstitutional conduct under similar circumstances to put Kent County on notice of deficient training. However, because the R&R did not recommend granting summary judgment to King and Linsea on the excessive force claim, the

13

Plaintiff has provided evidence of a single violation of federal rights.  Plaintiff argues that the magistrate judge erred in not considering portions of Linsea's testimony "that he had not received training on handcuffing an inmate who has an injured limb," although "the handcuffing of an inmate with an injured limb occurred with some degree of regularity."  (Pl.'s Obj. 25.)  Plaintiff points to this portion of Linsea's testimony:

> Q. . . . Does the – has any of your training addressed the handcuffing of inmates, let's say, for example, you have an inmate whose arm is injured?
>
> A. Mm-hm.
>
> Q. And you have to take them out of the facility, is there any training about how you handcuff that person if they have a limb that's injured?  Would you still handcuff them?  Let's say, if their arm i[s] injured, would you still put that arm in the handcuffs or is there training what to do in that situation?
>
> A. There's – you gotta make it work.  If somebody's arm is broken or in a sling or has a cast on or I've even taken somebody to the hospital that didn't have an arm, you – what I do I apply the belly chains still and I will just secure the one handcuff to the one hand that's not injured and the other hand is just free.
>
> Q. Okay.  Now, you indicated that's what [you] would do in that situation.  But have you received any training on that?
>
> A. I don't recall any specific training on it.  I believe, it's just common sense.

(Linsea Dep., ECF No. 96-5, PageID.2257.)  Contrary to Plaintiff's assertion, Linsea does not testify that handling an inmate with an injured limb occurred with regularity; he states that he has "taken somebody to the hospital that didn't have an arm." (*Id.*)  The magistrate judge did not err in finding that Plaintiff failed to present any evidence that such an occurrence was a recurring situation which would support additional training.

Furthermore, the deliberate indifference standard does not simply require evidence that there was some lack of training from the municipality; there must be a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

14

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390. Linsea's testimony that it was "common sense" to accommodate someone with an injured arm cuts against Plaintiff's argument that a need for additional or different training was so obvious.

Lastly, Plaintiff objects to the R&R's failure to address Plaintiff's *Monell* claim based on a failure to supervise. As stated above, the standard for failure to train and failure to supervise is related. Therefore, the result is the same. The Court will overrule Plaintiff's objection.

### 7. Seventh Objection – Qualified Immunity

The R&R determined that Mezsets, Santiago, and Cole were entitled to qualified immunity because Plaintiff failed to establish that they had committed any constitutional violations. Plaintiff objects to this because he objects to the determination that these Defendants did not commit any constitutional violations. Because the Court will overrule Plaintiff's objections on those points, this objection will be overruled as moot.

### 8. Eighth, Ninth, Tenth, and Eleventh Objections – State Law Negligence

Plaintiff's eighth to eleventh objections involve the R&R's disposition of the negligence claims in Count IV. In the eighth objection, Plaintiff finds fault with the magistrate judge's implication that it is unclear who the negligence claim is directed at, other than Nurse Sherwood. Plaintiff argues that both the complaint and this Court's previous order made clear that this claim is against all Defendants. (*See* 12/31/2020 Order.) The previous order dealt only with claims directed against Nurse Sherwood and does not address the negligence claim as it pertains to these Defendants. In any case, the R&R dealt with the negligence claim on the assumption that it was directed at all Defendants. Therefore, the Court will overrule this objection as moot.

Plaintiff's ninth objection addresses the R&R's grant of summary judgment to Mezsets on the negligence claim. The magistrate judgment determined that Plaintiff did not identify any

15

wrongful conduct that Mezsets committed. Plaintiff presents similar evidence as mentioned above for the deliberate indifference claim. That Plaintiff frequently complained to guards passing by, and that Mezsets was on duty at the time does not lead to an inference of wrongful conduct by Mezsets above the speculative level. The Court will overrule Plaintiff's objection.

The magistrate judge determined that Plaintiff had not alleged a negligence claim against King and Linsea in his complaint. The R&R stated that Plaintiff "cannot attempt to transform" an intentional tort claim "into a claim of gross negligence." (R&R 29.) Plaintiff's tenth objection faults the R&R for only considering the allegations that King and Linsea manhandled Plaintiff and not considering Plaintiff's allegations regarding too-tight handcuffing and these defendants' disregard of Plaintiff's complaints.

Defendants argue that Plaintiff did not previously list in his Complaint the specific allegations mentioned in his objection. However, Plaintiff's Complaint, indeed, contains allegations of too-tight handcuffing and directs its negligence claim against all defendants, including King and Linsea. (Compl. 5-6, 10, ECF No. 1.)

Defendants further argue that Plaintiff's negligence claim as to handcuffing fails because there must be a physical injury. (Defs.' Resp. to Pl.'s Obj. 17, ECF No. 121 (quoting *Oliver v. Smith*, 15 N.W.2d 314, 418 (Mich. App. 2006).) However, as stated above, Plaintiff has put forth evidence that he suffered a physical injury. Therefore, the Court will sustain Plaintiff's objection, and King and Linsea are not entitled to summary judgment on the negligence claim based on handcuffing.

As to Plaintiff's eleventh objection, the magistrate judge recommended denying summary judgment on the negligence counts against Santiago and Cole, but in the alternative, if the Court were to grant summary judgment to Santiago and Cole on the federal counts, the magistrate judge

recommended declining to exercise supplemental jurisdiction over the state law negligence count. Plaintiff objects to this alternative recommendation. However, as the Court held in its order issued on September 3, 2022, both comity and judicial economy favor dismissing the remaining negligence claim to avoid needlessly deciding a state-law claim. (9/3/2022 Order.) As the magistrate judge observed, if the Court were to exercise residual jurisdiction, this case would present several issues that could confuse a jury. Further, exercising jurisdiction would extend trial. Therefore, the Court will adopt the magistrate judge's alternative recommendation.

### B. Defendants' Objections

#### 1. First and Second Objections – Excessive Force & Qualified Immunity

The magistrate judge determined that a "genuine issue of material fact exists as to whether Deputies King and Linsea used excessive force" "when transporting him to and from the hospital." (R&R 23.) Defendants object to the R&R's analysis of the excessive force claim because they point out that Plaintiff did not allege the use of excessive force *on the way* to the hospital. Plaintiff's allegations focused on King and Linsea's conduct from the hospital back to KCCF. (Compl. 6 ("While Defendants King and Linsea took Plaintiff from the hospital to the transport vehicle, they man-handled Plaintiff by dragging and pushing and pulling at him and laughing at him.").) Plaintiff responds by pointing to deposition testimony where he claims that King and Linsea also manhandled him on the way to the hospital. (*See* Olmetti Dep., ECF No. 91-3, PageID.2003.) However, this deposition testimony was not put before the magistrate on the briefing for summary judgment. Therefore, Plaintiff's excessive force claim based on King and Linsea's conduct includes only the conduct on the way from the hospital back to KCCF. The Court will sustain Defendants' objection.

Nevertheless, King and Linsea are not entitled to summary judgment on this count. The magistrate judge was not persuaded by Defendants' argument that their pushing and shoving the

17

Plaintiff was *de minimis* force. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."); *but see Williams v. Maurer*, 9 F.4th 416, 439 (6th Cir. 2021) ("'[A] plaintiff may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.'" (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 246 (6th Cir. 2010) (internal citation omitted))). The R&R found that Plaintiff's undisputed significant injuries created a question of fact as to whether Defendants' conduct was objectively unreasonable. Defendants argue that the analysis changes if the conduct occurred after rather than before the hospital visit because there was no longer an ongoing medical emergency. However, Defendants do not provide support for why that fact makes a difference to the summary judgment analysis. Plaintiff still sustained injuries after the emergency room visit.

Defendants also object to the R&R's denial of qualified immunity to King and Linsea. The R&R held that qualified immunity could not be granted because a genuine issue of material fact exists. (R&R 27.) On the handcuffing claim, the Sixth Circuit has held since 1991 that "the right to be free from too-tight handcuffing" has been "clearly established." *Hughey*, 3 F.4th at 293 (citing *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997)); *see also Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015) ("[T]his Court [has] directly and unequivocally determined, time and time again, that unduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment.").

Defendants argue that Plaintiff "failed to identify established precedent that would make it clear to Deputies King and Linsea that 'pulling' or 'jerking' a detainee during transport that caused no injury would violate the Constitution." (Defs.' Obj. 4, ECF No. 116.) For a right to be clearly established, the "unlawfulness must be apparent in the light of pre-existing law, but we need not

18

find a case in which the very action in question has previously been held unlawful." *Greene*, 22 F.4th at 615 (quoting *Burwell v. City of Lansing*, 7 F.4th 456, 476 (6th Cir. 2021)) (internal quotation marks omitted). It is clearly established that when there is no safety risk, the use of gratuitous violence is never reasonable. *Williams*, 9 F.4th at 440 (citing *Walters v. Stafford*, 317 F. App'x 479, 491 (6th Cir. 2009)); *see also Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006). It is undisputed that Plaintiff did not pose a safety risk. Therefore, Defendants King and Linsea are not entitled to qualified immunity.

### 2. Third Objection

Santiago and Cole object to the R&R's recommending denial of summary judgment as to the negligence claim. Because the Court will decline to exercise supplemental jurisdiction over the negligence claim against Santiago and Cole, the Court will overrule this objection as moot.

### IV. CONCLUSION

For the reasons stated above, the Court will sustain Plaintiff's second, fifth, and tenth objections, and overrule the rest. The Court will sustain Defendants' second objection and overrule the rest. An order will enter consistent with this Opinion.

Dated: September 15, 2022                /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE